UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARCUS ROOKS,
    Plaintiff,

v.          3:20cv299 (MPS)

A. SANTIAGO, et al.,
    Defendants.

## INITIAL REVIEW ORDER ON MOTION TO AMEND

The plaintiff, Marcus Rooks, a sentenced inmate[1] currently in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Director of Security Antonio Santiago, Security Risk Group ("SRG") Coordinator Daniel Pappoosha, District Administrator Scott Erfe, Garner Correctional Institution ("Garner") Warden Hannah, Acting District Administrator Ned McCormick, Deputy Warden Egan, Captain Hughes, Captain Hurdle, Intelligence Officer Blekis, Counselor Supervisor Calderon, Investigator Snowdon, and Disciplinary Hearing Officer ("DHO") McNeil in their official and individual capacities. Compl., Doc. #1. In an initial review order, this court construed Rooks's complaint as alleging violation of his Fourteenth and Eighth Amendment rights under the United States Constitution, and seeking damages and injunctive relief. Initial Review Order, Doc. #10. The court permitted the following claims to proceed beyond initial review: Rooks's Fourteenth Amendment procedural due process claims against Captain Hurdle, Officer Blekis, Investigator Snowdon, DHO McNeil, Captain Hughes, District

---

[1] On December 15, 2014, Rooks was sentenced to fifteen years of imprisonment. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=266801.

1

Administrator Erfe, Acting Administrator McCormick, Warden Hannah, Counselor Supervisor Calderon, Deputy Warden Egan, and SRG Coordinator Pappoosha; his Eighth Amendment claims of excessive force against Captain Hurdle, Warden Hannah, Deputy Warden Egan, and Counselor Supervisor Calderon; his Eighth Amendment claims based on conditions of confinement of the SRG Phase 2 Program at MacDougall-Walker Correctional Institution ("MacDougall") against District Administrator Erfe, Acting Administrator McCormick, and SRG Coordinator Pappoosha in their individual capacities; and his request for injunctive relief against Director Santiago, SRG Coordinator Pappoosha, District Administrator Erfe, and Acting Administrator McCormick to cease the inhumane conditions of confinement for the SRG Phase 2 at MacDougall-Walker. *Id.* at 16-17.

On September 24, 2020, Rooks filed an amended complaint to "strengthen" his existing claims and add new claims against new defendants MacDougall Warden Barone, Captain Salius, Intelligence Officer Behm, District Administrator Mulligan, Northern Correctional Institution "Northern" Warden Bowles, Captain Chevalier, and Captain Blackstock.[2] Am. Compl., Doc. #33. The defendants have filed an answer to the amended complaint, although they did not respond to some of Rooks's allegations that have yet to undergo initial review. Answer to Am. Compl., Doc. #36.

After an initial review of Rooks's amended claims, the court will permit the following claims to proceed in this action: Rooks's Fourteenth Amendment procedural due process claims against Captain Hurdle, Officer Blekis, Investigator Snowdon, DHO McNeil, Captain Hughes, District Administrator Erfe, Acting Administrator McCormick, Warden Hannah, Counselor

---

[2] The amended complaint completely replaces the prior complaint in the action, and the allegations of the prior complaint are not incorporated into this amended complaint by reference.

Supervisor Calderon, Deputy Warden Egan, SRG Coordinator Pappoosha, and District Administrator Mulligan in their individual capacities; his Eighth Amendment claims of excessive force against Captain Hurdle, Warden Hannah, Deputy Warden Egan, and Counselor Supervisor Calderon in their individual capacities; and his Eighth Amendment claims based on conditions of confinement of SRG Phase 2 at MacDougall-Walker against District Administrator Erfe, Acting Administrator McCormick, SRG Coordinator Pappoosha, Warden Barone, Captain Salius, and Officer Behm in their individual capacities. Under Federal Rule of Civil Procedure 21, the court will sever and dismiss without prejudice Rooks's amended claims arising from his transfer and confinement at Northern.

## I.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro

se complaint, a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.     ALLEGATIONS

The court notes that Rooks's amended allegations are substantively similar to his original allegations concerning his transfer from Corrigan to Garner after his overall risk level reduction; his placement in the Restrictive Housing Unit ("RHU"); the issuance of the disciplinary report issued by Officer Blekis for SRG affiliation, related hearing, and guilty finding; the use of excessive force by Captain Hurdle; and his transfer to the Phase 2 SRG Program at MacDougall. The court incorporates herein the relevant facts about those events from its prior initial review order.

The court includes herein Rooks's amended allegations regarding his conditions of confinement at the Phase 2 SRG Program at MacDougall, the issuance of a disciplinary report by Officer Behm, and his transfer to and confinement at Northern. Am. Compl., Doc. #33.

In SRG Phase 2 housing at MacDougall, Rooks was subjected to restrictive and dangerous conditions. *Id.* at ¶¶ 22-31, 32. He was allowed only three showers and three phone calls per week and five days of recreation per week (with no shower on two of those days). *Id.* at ¶ 26. He had no access to electricity in his cell so his television, electric razor, CD player, and hot pot were taken away and stored; and commissary items that require hot water cannot be cooked. *Id.* at ¶¶ 23-24. He spent 23 hours a day in a cell during the week and 24 hours in his cell each day of the weekend. *Id.* at ¶ 30. There were no religious services.[3] *Id.* at ¶ 33. There were

---

[3] Rooks has not provided sufficient allegations about his religion to suggest a violation of the First Amendment's free-exercise clause. To state a First Amendment free exercise claim, an inmate must allege

4

no chess pieces for the chess board. *Id.* at ¶ 27. The shower stalls were dirty with flooding drains that harbored feces, blood, and other bodily fluids. *Id.* at ¶ 28. There were no social visits from friends so only family members could bring a child to see his or her parent in prison.[4] *Id.* at ¶ 25. Inmates were subjected to bullying by members of gangs, who tried to force them to join their gang; inmates had to fight for respect. *Id.* at ¶ 31. There was no programming or worksheets about why gangs are bad and the correction officers cheered on the inmate fights. *Id.* at ¶¶ 29, 31.

Rooks spoke to Intelligence Officer Behm, who conducted his own investigation by reading Rooks's mail and listening to his phone calls. *Id.* at ¶ 32. He issued Rooks a disciplinary report for SRG affiliation because Rooks had stated that he was not "Hoover 52" but was "Hoover 59." *Id.* at ¶ 32. Officer Behm told Rooks that he belonged in the SRG program because

---

"that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006); *see also Richard v. Strom,* 2018 WL 6050898, at *8 (D. Conn. 2018) (noting the "Second Circuit['s] uncertainty" as to whether an inmate must continue to make a "threshold showing" that the conduct of the prison official substantially burdened his or her religious beliefs, but observing that "absent instruction to the contrary, Second Circuit courts have continued to assume the validity of the substantial burden test when addressing free exercise claims") (citations omitted).

[4] The "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Malave v. Weir*, 750 F. App'x 65, 67 (2d Cir. 2019) (summary order) (noting that "*Overton* did not consider whether there is a First Amendment right to visitation in prison. . . ." and that "[c]ases in this circuit also have not clearly established a right to spousal visitation in prison."). A prisoner's constitutional right is not violated by limitations on visitation if the procedure "bear[s] a rational relation to legitimate penological interests." *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (quoting *Overton*, 539 U.S. at 132); *see also Patterson v. City of New York,* No. 11-CV-7976, 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right."). A court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton,* 539 U.S. at 132. Rooks has not alleged sufficient facts to raise an inference that the limitations on his visitation with his friends is not reasonably related to legitimate penological goals.

he could "see it all over" Rooks's Facebook page.[5] *Id*. He indicated further that the disciplinary report could help show that Rooks was not guilty of his prior disciplinary report based on a document with the identifier "Hoover 52" rather than "Hoover 59" in 2011 and handwriting that differed from that of Rooks. *Id*.

Rooks later spoke to Captain Salius about Officer Behm's investigation. *Id*. at ¶ 34. Captain Salius indicated that SRG Coordinator Pappoosha wanted Rooks in the Phase 2 SRG Program. *Id*. at ¶ 35. Rooks sent Pappoosha multiple request to have his original SRG disciplinary report packet sent to him, but Pappoosha has yet to provide these materials. *Id*. at ¶ 35.

While at MacDougall, Rooks had recreation with fourteen inmates, nine of whom were Bloods-affiliated. *Id*. at ¶ 36. Rooks was threatened to either join the other inmates or take recreation alone on a status similar to protective custody. *Id*. at ¶ 36.

On March 6, 2020, Rooks broke his right pinky as a result of certain Bloods-affiliated inmates' bullying conduct in the recreation yard. *Id*. at ¶ 36.

Warden Barone and Captain Salius were aware of the fact that the Bloods-affiliated inmates bully other inmates telling them to join the Bloods or get beat up. *Id*. at ¶ 38. Officer Behm was also aware of this misconduct, but he permitted the bullying to continue rather than splitting up the inmates at recreation. *Id*.

---

[5] As Rooks does not allege that Officer Behm sought to punish or retaliate against him for engaging in First Amendment-protected expression apart from what the Facebook posts suggested about his gang affiliation, the complaint does not plausibly allege a First Amendment retaliation claim. *See Caves v. Payne,* 2020 WL 167916, at *4   (D. Conn. 2020) (rejecting First Amendment retaliation claim because "[t]he defendants' use of social media posts and Caves' own statements therein, is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit").

Rooks appealed his Phase 2 SRG Program placement but Warden Mulligan denied his appeal. *Id.* at ¶ 39. Rooks remained at MacDougall until he was involved in a fight and he was placed by Captain Salius in the Phase 1 SRG Program at Northern. *Id.* at ¶ 39.

At Northern, Rooks was subjected to even more restrictive conditions: Rooks is required to be handcuffed and stripped naked before leaving his cell; and he is handcuffed during the recreation period, which is five times per week. *Id.* at ¶¶ 41-42. The Phase 1 SRG Program has no programming, no religious services, no law library, and no books in the bookcase. *Id.* at ¶ 53.

SRG Coordinator Pappoosha, who has toured the Northern facility three times, has asked Rooks for information about the Hoover gang, about which Papoosha has no information. *Id.* at ¶ 46. He has let Rooks know that he received notice of the lawsuit in the mail and noted all of the disciplinary reports that Rooks has received in the Phase 1 Program. *Id.* at ¶ 47.

At Northern, Rooks has been cited for staff conflict and he has received disciplinary reports from Captains Chevalier and Blackstock. *Id.* at ¶¶ 43, 57-60. He has been antagonized and retaliated against for filing this lawsuit. *Id.* at ¶ 45. Inmates threaten to kill him but the correctional staff do nothing about the threats. *Id.* at ¶ 55. Rooks has complained about a lot of the correctional officers so they call him a "snitch," which jeopardizes his safety. *Id.* at ¶ 56.

Rooks's mental health has deteriorated, and he has twice attempted suicide. *Id.* at ¶ 44, 45, 63. When mental health staff members attempt to help him, they are picked on and antagonized. *Id.* at ¶ 49. Correction officers mock Rooks and delay and deny him mental health treatment. *Id.* at ¶ 50. Northern is full of correctional staff who commit misconduct that is never reported. *Id.* at ¶ 64.

7

Rooks alleges the SRG program has caused him mental depression, stress, neglect, harassment, emotional damage, and property and physical damage.

### III.    DISCUSSION

In its initial review order, the court concluded that Rooks's original complaint alleged plausible violations of his Fourteenth Amendment right to procedural due process and his Eighth Amendment rights based on misuse of force by Captain Hurdle and the MacDougall Phase 2 Program conditions of confinement. The court will consider whether the amended complaint alleges any additional plausible claims.

#### A.    Fourteenth Amendment Procedural Due Process

The court has already concluded that Rooks stated plausible Fourteenth Amendment procedural due process claims stemming from the SRG affiliation disciplinary report issued by Correction Officer Blekis that resulted in his SRG designation and SRG Program placement.[6] "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

---

[6] As this court previously noted in its prior initial review, Rooks cannot assert a constitutional violation based on his placement in a Level 4 facility after his level reduction because an inmate has no liberty interest in serving a sentence at a particular location. Doc. #10 at 7 n.5; *see Halloway v. Goord,* No. 9:03-CV-01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (citing *Wilkinson v. Austin,* 545 U.S. 209, 221-22 (2005)) (other citation omitted).

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. Rooks has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000). In the prison context, a prisoner must show that he was subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 472, 484 (1995) (prisoner subjected to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest for purposes due process).[7] The court must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "The inquiry into the severity of confinement assesses whether differences in conditions between a restrictive housing status and the general population or other restrictive statuses constitute a significant hardship." *Taylor v. Rodriguez*, 238 F.3d 188, 195 (2d Cir. 2001).

To the extent Rooks is asserting another claim of procedural due process violation based on Officer Behm's issuance of a second disciplinary report for SRG affiliation, this claim fails because his allegations do not raise any suggestion that he was subjected to any atypical and significant hardship as a result of Officer Behm's conduct. His allegations indicate that he

---

[7] *Sandin* applies to circumstances involving both administrative and disciplinary segregation. *Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998).

remained at MacDougall until his regression to Phase 1 due to a fight later during his MacDougall confinement.

Accordingly, the court will only permit Rooks's procedural due process claim to proceed on the allegations stemming from the SRG-affiliation disciplinary report issued by Correction Officer Blekis that resulted in his SRG designation and placement as stated in the prior initial review order. However, the court will permit this claim to proceed also against District Administrator Mulligan, who allegedly denied Rooks's appeal of his SRG Phase 2 Program placement. *See Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019) (supervisory officials who were informed of violation but failed to remedy the violation may be held liable); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[8]

### C.     Eighth Amendment Deliberate Indifference to Conditions of Confinement

On initial review, the court permitted Rooks's Eighth Amendment conditions of confinement claims based on deliberate indifference to unsanitary conditions and threats to Rooks's safety during Rooks's confinement in the SRG Phase 2 Program at MacDougall-Walker to proceed against District Administrator Erfe, Acting Administrator McCormick, and SRG Coordinator Pappoosha.[9]

---

[8] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, without further Second Circuit guidance on this issue, the court assumes for purposes of ruling on this motion that the categories outlined in *Colon* remain valid.

[9] However, the court notes that the general restrictions of the SRG Program do not establish a claim of Eighth Amendment violation. *See Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) ("Although the conditions described [in phases 2 and 3 of the SRG program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional."); *Pagan v. Dougherty*, No. 3:18-cv-1668 (VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (allegations that during confinement in SRG program prisoner was subjected to limitations on

In his amended complaint, Rooks also alleges sufficient facts for claims of deliberate indifference to his safety to proceed against Warden Barone, Captain Salius and Officer Behm, who were allegedly aware of the Bloods-affiliated inmates' bullying conduct toward non-Blood-affiliated inmates during the recreation period that resulted in threats to Rooks's safety and an injury to his pinky. *See* Doc. No. #33 at ¶¶ 37-38.

### D. Claims Related to Northern

Rooks makes several allegations concerning his regression to Phase 1 SRG Program that resulted in his transfer to the Northern. Rooks's allegations indicate that at Northern, he was subjected to very restrictive conditions, was threatened by other inmates, and was retaliated against for filing this lawsuit, among other complaints about correctional staff. He also alleges that he suffered from mental depression and emotional stress but was denied mental health care, although he twice attempted suicide.

The court concludes that these allegations and claims are not sufficiently related to the claims that the court already determined to be plausible concerning violation of his procedural due process rights in violation of the Fourteenth Amendment in connection with his SRG-affiliation, the misuse of force by Captain Hurdle, and the conditions of confinement at MacDougall.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and

---

telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers and was confined in his cell for 23 hours per day did not support an objective component of Eighth Amendment claim for inhumane conditions of confinement) (citing cases).

11

occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court approaches the determination of "[w]hat [might] constitute the same transaction or occurrence ... on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party" pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

The factual issues and the legal theories related to the transfer of Rooks by Officer Salius to Northern and the alleged disciplinary reports, threats, retaliation, and lack of mental health care that Rooks suffered at Northern are not common to the factual and legal theories pertaining to Rooks's claims of Fourteenth Amendment due process violation stemming from the disciplinary report issued by Officer Blekis and the Eighth Amendment violations based on the use of excessive force by Captain Hurdle and his conditions of confinement at MacDougall. Different witnesses/testimony and documentary evidence would be required to prove the separate claims at trial. Thus, the unrelated allegations arising from Rooks's transfer to and confinement at Northern are not properly joined in this action and the relevant factors favor severance of these claims. *See Papantoniou v. Quiros*, No. 3:19CV1996(KAD), 2020 WL

12

1904692, at *10 (D. Conn. Apr. 17, 2020) (severing and dismissing without prejudice all claims unrelated to Eighth Amendment deliberate indifference to medical needs claim as improperly joined in violation of Rules 20 and 21, Fed. R. Civ. P. and advising plaintiff that improperly joined claims must be pursued in separate actions) (citations omitted). Rooks's claims arising from his transfer and confinement at Northern must be severed and dismissed without prejudice; he may pursue such claims in a separate action.

### E. Official Capacity Claims[10]

This court's prior initial review order permitted Rooks's request for an injunction ordering Director Santiago, SRG Coordinator Pappoosha, District Administrator Erfe, and Acting District Administrator McCormick to cease the inhumane conditions of confinement for the SRG Phase 2 Program at MacDougall. Because Rooks is no longer incarcerated in the SRG Phase 2 Program at MacDougall, this request for injunctive relief is now moot. "A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility. *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002). The request for an injunction is thus dismissed.

### ORDERS

The Court enters the following orders:

(1) The case shall proceed on Rooks's Fourteenth Amendment procedural due process claims against Captain Hurdle, Officer Blekis, Investigator Snowdon, DHO McNeil, Captain Hughes, District Administrator Erfe, Acting Administrator McCormick, Warden Hannah, Counselor

---

[10] The court notes that Rooks's amended complaint has failed to include a demand for relief in compliance with Federal Rule of Civil Procedure 8(a)(3). The court will construe for purposes of this initial review of the amended complaint that Rooks is asserting a claim for damages. However, the court will instruct Rooks to file a Notice of Requested Relief that states what damages he requests.

13

Supervisor Calderon, Deputy Warden Egan, SRG Coordinator Pappoosha, and District Administrator Mulligan; his Eighth Amendment claims of excessive force against Captain Hurdle, Warden Hannah, Deputy Warden Egan, and Counselor Supervisor Calderon in their individual capacities; and his Eighth Amendment claims based on conditions of confinement of SRG Phase 2 Program at MacDougall-Walker against District Administrator Erfe, Acting Administrator McCormick, SRG Coordinator Pappoosha, Warden Barone, Captain Salius, and Officer Behm in their individual capacities.[11] All other claims, including any official capacity claims, are DISMISSED without prejudice.

Rooks's claims arising from his transfer and confinement at Northern must be severed pursuant to Federal Rule of Civil Procedure 21 and dismissed without prejudice; he may pursue such claims in a separate action.

(2) The clerk shall verify the current work addresses for District Administrator W. Mulligan, Warden Barone, Captain Salius, and Officer Behm with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the initial review order (Doc. #10), this order, and the amended complaint (Doc. #33) to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

---

[11] The court will consider Rooks's allegation that he suffered mental depression, stress, neglect, harassment and property/physical damage to be facts underlying his claim for damages due to these asserted constitutional violations.

14

(3) The clerk shall mail a courtesy copy of the amended complaint (Doc. #33) and this Order to the DOC Office of Legal Affairs.

(4) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not

enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 18th day of November 2020, at Hartford, Connecticut.