UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS ROOKS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     3:20cv299 (MPS) |
| A. SANTIAGO, et al.,<br>    Defendants. | :<br>:<br>: |

## **RULING ON DEFENDANTS' MOTION TO DISMISS [ECF NO. 46]**

Plaintiff, Marcus Rooks, a *pro se* incarcerated inmate, commenced this action on March 4, 2020, against several current and former Department of Correction officials. After the court issued an Initial Review Order on his complaint, Rooks filed an amended complaint on September 8, 2020. (ECF No. 30). He filed his second amended complaint on September 24, 2020. (ECF No. 33). In an initial review order on Plaintiff Marcus Rooks' second amended complaint, this court permitted Rooks to proceed on his Fourteenth Amendment procedural due process claims against Captain Hurdle, Officer Blekis, Investigator Snowden, DHO McNeil, Captain Hughes, District Administrator Erfe, Acting Administrator McCormick, Warden Hannah, Counselor Supervisor Calderon, Deputy Warden Egan, SRG Coordinator Pappoosha, and District Administrator Mulligan; on his Eighth Amendment claims of excessive force against Captain Hurdle, Warden Hannah, Deputy Warden Egan, and Counselor Supervisor Calderon in their individual capacities; and on his Eighth Amendment claims based on conditions of confinement of SRG Phase 2 at MacDougall-Walker against District Administrator Erfe, Acting Administrator McCormick, SRG Coordinator Pappoosha, Warden Barone, Captain Salius, and Officer Behm in their individual capacities. (ECF No. 37).

On January 25, 2021, Defendants filed a motion to dismiss District Administrator Mulligan from this action on the basis of his lack of personal involvement in any Fourteenth Amendment due process violation and qualified immunity. (ECF No. 46). Rooks has opposed the motion to dismiss. (ECF Nos. 49, 50).

**STANDARD OF REVIEW**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). "[D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint,[1]

---

[1] A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect . . . ." C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

or matters of which the Court can take judicial notice. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

**FACTUAL ALLEGATIONS**

The court includes herein only the facts alleged in the second amended complaint and reflected in its attachments that are relevant to Rooks' claims against District Administrator Mulligan. *See* Am. Compl. (ECF No. 33), Exhibits (ECF No. 33-1).

On October 18, 2019, Officer Blekis and Unit Manager Hurdle pulled Rooks out of his Restricted Housing Unit ("RHU") cell to ask him about his property. Am. Compl. at ¶ 8. After Rooks indicated he did not know anything about the property, Officer Blekis asked him about "What's up with Hoover 52" and handed him a disciplinary report stating that he was being affiliated as a Crips member due to a document found with his property showing Security Risk Group ("SRG") Crip identifiers. *Id.* at ¶ 10; Exhibits at 5 (Disciplinary Report).

On October 21, 2019, Rooks spoke to Investigator Snowden to review the disciplinary report but Snowden did not show him any evidence, denied him an advocate, and gave him no time to prepare for a defense prior to being found guilty. Am. Compl. at ¶ 10.

On October 23, DHO McNeil came to his cell door and asked him how he pleaded without showing him any evidence. *Id.* at ¶ 11. Rooks pleaded not guilty but McNeil found him guilty. *Id.* at ¶ 11. Rooks later complained to Intelligence Coordinator Captain Hughes about being denied an advocate and not seeing any evidence until the hearing. *Id.* at ¶ 12. He said he would investigate the situation. *Id.*

Rooks appealed both the guilty finding on the disciplinary report and the designation. *Id.* at ¶ 14. *Id.* Rooks alleges that the SRG affiliation appeal was denied on November 14, 2019, and

his designation appeal was denied on December 4, 2019. *Id.*; Exhibit at p 9-11. He alleges that neither Erfe nor McCormick conducted an investigation into his appeals. *Id.*

Rooks alleges he appealed his Phase 2 SRG Program placement, which was denied by Mulligan. *Id.* at ¶ 39. Rooks remained at MacDougall until he was involved in a fight and he was placed by Captain Salius in the Phase 1 SRG Program at Northern. *Id.*

Rooks has attached his grievance appeals reviewed by Mulligan at Exhibits D and G to the amended complaint. *See* Exhibits at 14, 21. In a grievance to Warden Hannah received on November 15, 2019, Rooks complained in a grievance that a document had been placed in his property by an inmate or by Officer Blekis; and he requested to have the document "DNA tested and finger printed," to press charges against whomever planted the document in his property, to have video footage preserved, and to have the document viewed and studied by the Statewide Gang Taskforce to verify the validity of the claim that the document is "Crip Creed." Exhibits at 12. He claims that he never touched the document but was found guilty of SRG affiliation due to a failure of due process and a failed investigation. *Id.* at 13.

Warden Hannah denied his claims as unsubstantiated. *Id.* Rooks then filed a grievance appeal, which was denied by District Administrator Mulligan, who stated: "You are appealing a level one grievance regarding an SRG affiliation at Garner C.I. The response given by Warden Hannah was appropriate. You received a Disciplinary Report for SRG affiliation on 10/18/19. The report was taken to a hearing on 10/23/19 where you were found guilty based upon the evidence provided. There is nothing to suggest the evidence was 'planted' by staff or other inmates." Exhibits at 14.

Later in a grievance received on January 14, 2020, Rooks indicated that

he was "filing against his housing and placement in Phase 2" of the SRG program after he had been "set up with a document in his cell." Exhibits at 20. He requested a "resolution" to be "put in either Phase 1 or Phase 3." *Id.* Warden Baron denied the Grievance for the stated reasons that he was "currently being managed appropriately in phase 2 of the Security Risk Group Program." *Id.*

Rooks filed a grievance appeal, complaining about his Phase 2 placement after he got caught with "paperwork that isn't [his] affiliation[;]" District Administrator Mulligan denied the appeal by affirming Warden Barone's response and explaining that Administrative Directive 6.14 does not state that an inmate must begin the program in phases 1, or 3." Exhibits at 21.

**DISCUSSION**

Defendants argue that Rooks has not alleged a plausible claim against District Administrator Mulligan in his individual capacity under 42 U.S.C. § 1983.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Rooks' allegations about District Administrator Mulligan denying his grievance appeals about his SRG housing and phase placement are not sufficient to raise an inference that District Administrator Mulligan had any direct involvement in the alleged Fourteenth Amendment violation arising from his SRG affiliation or SRG phase placement. Even before the Second Circuit's clarification that "there is no special rule" for supervisory liability, *id.* at 618, the Second Circuit noted that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); and district courts held that "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement" of a supervisor in the denial of a constitutional right. *See Perrilla v. Fischer*, No. 13-CV-0398M, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013); *see also Joyner v. Greiner*, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) ("The fact that the Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant." (quotation marks and citation omitted)). More recently after *Tangreti*, a decision in this District stated that a "*pro forma* denial of a grievance - … without more, does not create an issue of personal involvement in an ongoing Constitutional violation ….." *Brown v. Dep't of Corr.*, No. 3:16-CV-00376(WIG), 2021 WL 124417, at *11 (D. Conn. Jan. 13, 2021) (citing *Hidalgo v. Kikendall*, No. 08 CIV. 7536 (DC), 2009 WL 2176334, at *4 (S.D.N.Y. 2009) ("The reason for this rule is clear: Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies, and invariably

the plaintiff's grievance will have been passed upon by the Superintendent.") (internal quotation omitted)); *see also Washington v. Fitzpatrick*, No. 20 CV 911 (VB), 2021 WL 966085, at *10 (S.D.N.Y. Mar. 15, 2021) ( "[f]ailing to correct another officer's violation" by affirming a disciplinary hearing verdict "does not suffice" to plead personal involvement in a due process violation); *Smart v. Annucci*, 2021 WL 260105, at *6–7 (same and discussing *Tangreti*).

Moreover, qualified immunity "protects government officials 'from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (qualified immunity requires showing that official violated clearly established law). At present, the law is not clearly established that a prison official may be held liable for a Fourteenth Amendment procedural due process violation due to the official's denying an administrative grievance or affirming a prison disciplinary or administrative decision. *Terbesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (district court must look to Supreme Court and the Courts of Appeals precedent to determine whether right is clearly established). Accordingly, District Administrator Mulligan is alternatively entitled to qualified immunity on Rooks' claim that Mulligan is liable for damages due to violation of his procedural due process rights.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss [ECF No. 46] is GRANTED. Defendant District Administrator Mulligan is DISMISSED from this action.

                                                  /s/
                                   Michael P. Shea
                                   United States District Judge

**SO ORDERED** this 1st day of June, at Hartford, Connecticut.