UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARCUS ROOKS,                         :
     *Plaintiff*,                      :
                                      :
v.                                    :     3:20cv299 (MPS)
                                      :
A. SANTIAGO, et al.,                  :
     *Defendants*.                     :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Marcus Rooks, a *pro se* inmate of the Connecticut Department of Correction ("DOC"), commenced this action on March 4, 2020, against several current and former DOC officials. After initial review of Rooks's second amended complaint, the Court permitted Rooks to proceed on the following individual capacity claims for damages: a Fourteenth Amendment procedural due process violation against Captain Hurdle, Officer Blekis, Investigator Snowden, DHO McNeil, Captain Hughes, District Administrator Erfe, Acting Administrator McCormick, Warden Hannah, Counselor Supervisor Calderon, Deputy Warden Egan, SRG Coordinator Papoosha,[1] and District Administrator Mulligan; an Eighth Amendment violation due to excessive force against Captain Hurdle, Warden Hannah, Deputy Warden Egan, and Counselor Supervisor Calderon; and an Eighth Amendment violation based on his conditions of confinement and a failure to protect him in the Security Risk Group ("SRG") Phase 2 Unit against District Administrator Erfe, Acting Administrator McCormick, SRG Coordinator Papoosha, Warden Barone, Captain Salius, and Officer Behm. IRO (ECF No. 37). The Court dismissed the official capacity claims. *Id.* at p. 14.

---

[1] In his amended complaint, Rooks referred to this defendant as Captain Pappoosha. Am. Compl. (ECF No. 33).

On June 1, 2021, the Court granted Defendants' motion to dismiss District Administrator Mulligan from this action. Ruling (ECF No. 55).

On July 16, 2021, Defendants filed a motion for summary judgment with a memorandum of law, Local Rule 56(a)(1) Statement, and supporting exhibits. Mot. for Summ. Judg. (ECF No. 62); Defs.' Mem. (ECF No. 62-1); Defs.' Local Rule 56(a) (ECF No. 62-2); Defs.' exs. (ECF Nos. 63-4-62-21 ). Defendants argue that Rooks failed to exhaust his administrative remedies as to his Eighth Amendment claims as required by the Prison Litigation Reform Act ("PLRA"); that Captain Papoosha, former District Administrator Erfe, Warden McCormick, Warden Hannah, Deputy Warden Egan, Counselor Supervisor Calderon, Captain Hughes, and Officer Blekis all lack personal involvement in any constitutional violation; and that Rooks's Fourteenth Amendment due process claims fail as a matter of law, or alternatively, are barred by qualified immunity.

On January 4, 2022, Rooks filed his opposition memorandum (which includes his declaration) and a separate Local Rule 56(a) Statement of Facts. Pl.'s Opp. (ECF No. 73); Pl.'s Rule 56(a) (ECF No. 72). On January 19, 2022, Defendants filed a Reply. Defs.' Reply (ECF No. 74).

For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## I.    FACTS[2]

---

[2] This factual background reflects the Court's review of the parties' Local Rule 56(a) statements of fact and supporting exhibits. The Court also considers Rooks's verified complaints in reviewing the motion for summary judgment. *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D.

Rooks was housed at Garner Correctional Institution ("Garner") from August 26, 2019 until November 19, 2019, when he was transferred to MacDougall-Walker Correctional Institution ("MacDougall"). Defs.' Rule 56(a) at ¶ 2. On March 6, 2020, he was transferred to Northern Correctional Institution ("Northern"). Defs.' Rule 56(a) at ¶ 3. On January 8, 2021, he was transferred back to MacDougall. *Id.* at ¶ 4.

On October 17, 2019, Rooks's property was removed from his cell while he was placed in the Restrictive Housing Unit ("RHU") during the course of an investigation into an incident between Rooks, his former cellmate, and another inmate. *Id.* at ¶ 10.

Per protocol, Officer Blekis stored and searched Rooks's property while Rooks was in the RHU. *Id.* at ¶ 11. Officer Blekis discovered a piece of lined paper in Rooks's property containing multiple SRG Crip identifiers. *Id.* Officer Blekis had no reason to believe this document did not belong to Rooks.[3] *Id.* at ¶ 12.

---

Conn. Dec. 18, 2018). The Court will include the facts relevant to Rooks's exhaustion of his administrative remedies in the discussion of PLRA.

The Defendants have informed Rooks of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice (ECF No. 62-3). Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." To the extent Rooks's Local Rule 56(a)2 Statement does not comply with Local Rule 56, the Court may consider Defendants' statement of fact to be admitted if supported by evidence. *Patterson v. Quiros*, No. 3:19CV147 (MPS), 2021 WL 681144, at *1, n.3 (D. Conn. Feb. 22, 2021).

[3] Rooks objects to this fact on the ground that Officer Blekis would not know if the document belonged to Rooks because he "didn't supervise the Inventory nor did he review the camera [footage] as [Rooks] asked." Pl.'s Rule 56(a) at ¶ 12.

Officer Blekis issued Rooks a disciplinary report for SRG Affiliation. Defs.' Rule 56(a) at ¶ 13. The report, dated October 18, 2019, stated:

> On 10/18/19 at approximately 9:00am, I officer Blekis, was examining some property belonging to inmate Rooks, Marcus #266801 which had been taken from his assigned cell the day before and stored in the phone room over night for further review. It was at this time that a piece of paper was discovered, which contained multiple Security Risk Group (SRG) CRIP identifiers. As a result of inmate Rooks being in possession of this material, he is being issued this class A disciplinary report for SRG Affiliation.

Blekis decl., Discip. Rpt., Defs.' ex. F at p. 46 (ECF No. 62-8).

Officer Scully delivered Rooks the disciplinary report on October 18, 2019. Defs.' Rule 56(a) at ¶ 14.[4]

Officer Snowden, the assigned disciplinary investigator, reviewed a copy of the document found in Rooks's property, the incident report, and the disciplinary report relating to Rooks's disciplinary charges for SRG Affiliation. Defs.' Rule 56(a) at ¶¶ 15-16. He interviewed Rooks on October 21, 2019. *Id.* at ¶ 17. Snowden avers that he informed Rooks of the hearing process and attempted to record his version of the events. Snowden decl., Defs.' ex. G at ¶ 9 (ECF No. 62-9). Rooks admits that Officer Snowden interviewed him but denies that he was informed of the hearing process. Am. Comp. at ¶ 10; Pl.'s Rule 56(a) at ¶ 17.

Snowden avers that Rooks declined the offer for advisor services and that Rooks was asked but failed to identify witnesses and documentary evidence for the hearing. Snowden decl., Defs.' ex. G at ¶ 11. Snowden also avers that he described the evidence and showed Rooks the document found in his property. Snowden decl., Defs.' ex. G at ¶ 10. Rooks claims that Snowden never showed him evidence, denied him the use of an adviser, and gave him no time to prepare

---

[4] Rooks represents that Officer Scully slid the report under his door and left. Pl.'s Rule 56(a) at ¶ 14.

4

for a defense prior to his being found guilty on Wednesday, October 23, 2019. Am. Compl. at ¶ 10; Pl.'s Rule 56(a) at ¶ 18; Pl.'s Opp. (Decl.) at ¶ 5. Rooks also asserts that he asked for video footage of his cell and his property being packed and for DNA and fingerprint evidence. Pl.'s Rule 56(a) at ¶ 19.

Snowden did not have the ability to fingerprint or "DNA test" the document. Defs.' Rule 56(a) at ¶ 21.

The Disciplinary Investigation Report (which reflects Rooks's refusal to sign the Report) states: "During the pre- hearing investigation I/M Rooks was informed of the hearing process. Inmate Rooks declined advisors services and choose[s] not [to] provide any witnesses to aid in his hearing process." ECF No. 62-9, Defs.' ex. G at p. 9.

Snowden concluded that his investigation showed no evidence to substantiate Rooks's claim that the paper discovered within his property did not belong to him or that a staff member or inmate had placed the document in his property. Defs.' Rule 56(a) at ¶ 20.[5] Because Snowden assessed that the evidence indicated that the document belonged to Rooks (who had not provided a substantiated reason for the presence of the document in his property), Snowden recommended that Disciplinary Hearing Officer ("DHO") McNeil render a guilty finding on the SRG affiliation charge. Defs.' Rule 56(a) at ¶¶ 22, 23.[6]

DHO McNeil held Rooks's SRG Affiliation disciplinary hearing on October 23, 2019. Defs.' Rule 56(a) at ¶ 23. After review of the evidence, MacNeil determined that Rooks had not

---

[5] Rooks asserts without substantiation—i.e., without citing any evidence, as required by Local Rule 56—that no investigation occurred on Monday, October 21, 2019. Pl.'s Rule 56(a) at ¶ 20.

[6] Rooks denies Snowden's conclusion on the ground that Snowden had no time to investigate the issues because "it was Monday." Pl.'s Rule 56(a) at ¶ 22.

credibly asserted that the SRG document did not belong to him in light of the fact that the document was found in his property. *Id.* at ¶ 24. DHO MacNeil avers that he could have determined Rooks's guilt based on his possession of the document alone, which was sufficient evidence to support his guilty finding on the SRG charge under Administrative Directive 9.5, Code of Discipline. *Id.* at ¶ 25;[7] *see* MacNeil decl., ex. H at ¶¶ 14-16 (ECF No. 62-10).

McNeil provided a Disciplinary Process Summary Report, which noted that Rooks was found guilty "based on staff observation and documentation" and that Rooks stated "that the paper wasn't his but the paper was found in his cell[.]"*See* MacNeil decl., ex. H at ¶ 17-20; Discip. Process Summ. Rpt., ex. H at pp. 8-9. He had no further involvement with Rooks after the hearing. Defs.' Rule 56(a) at ¶ 26.

Defendants Erfe and McCormick reviewed Rooks's appeal of his designation. *Id.* at ¶ 28. Neither Erfe nor McCormick observed anything to indicate that Rooks had been subjected to a due process error at his hearing. *Id.*

SRG Coordinator Captain Papoosha avers that he did not issue Rooks's disciplinary report, was not involved with the investigation, and was not present at the disciplinary hearing. Papoosha decl., ex. J at ¶¶ 7, 19. Captain Hughes, Warden Hannah, Deputy Warden Egan and Counselor Supervisor Calderon did not have the ability to overturn an SRG designation or order a new hearing. Defs.' Rule 56(a) at ¶ 32.[8]

In January 2020, Rooks received another disciplinary report charging him with SRG Affiliation. Defs.' Rule 56(a) at ¶ 57. Rooks pled guilty to the charge. *See* ECF No. 62-12 at 24.

---

[7] Plaintiff denies this fact without substantiation. Pl.'s Rule 56(a) at ¶ 25.

[8] Rooks asserts without substantiation that these defendants could have "sought out a proper and adequate investigation." Pl.'s Rule 56(a) at ¶ 32.

## II.      STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly

supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.    DISCUSSION

Defendants argue that Rooks has failed to comply with the PLRA because he failed to exhaust administrative remedies on his Eighth Amendment claims asserting use of excessive force, unconstitutional conditions of confinement, and failure to protect him.[9]

The PRLA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[10] 42 US.C. § 1997e(a).

Failure to exhaust is an affirmative defense under the PLRA, *Jones v. Bock*, 549 U.S. 199, 217 (2007), and a defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").[11]

---

[9] Defendants have asserted Rooks's failure to exhaust his administrative remedies as an affirmative defense. Answers (ECF Nos. 36, 47).

[10] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[11] Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is Defendants' burden to establish that Rooks failed to meet the exhaustion requirement, Rooks bears the burden of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) (citations omitted).

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642-643 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at

643-644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; a plaintiff must exhaust his administrative remedies prior to filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-CV-903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).

<u>Administrative Remedies Under Administrative Directive 9.6[12]</u>

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(A). It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must either include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602) or explain its absence. A.D. 9.6(6)(C).

The Level-1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance. A.D. 9.6(6)(C). The Unit Administrator

---

[12] Defendants have submitted the relevant version of Administrative Directive 9.6. *see* Defs.' ex. C at 5-18 (ECF No. 62-5).

shall respond in writing to the Level-1 Grievance within thirty business days of his or her receipt of the Grievance. *See* A.D. 9.6(6)(I). The inmate may appeal the disposition of the Level-1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. A.D. 9.6(6)(G), (I) & (K). A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed. *See* A.D. 9.6(6)(G).

A Level-2 Appeal of a disposition of a Level-1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-1 Grievance. *See* A.D. 9.6(6)(K). The Level-2 Appeal of the Unit Administrator's failure to dispose of the Level-1 Grievance in a timely manner must be filed within 65 days from the date the Level-1 Grievance was filed by the inmate. *See* A.D. 9.6(6)(M).

Level-2 Appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. A.D. 9.6(6)(K). The District Administrator is required to respond to the Level-2 Appeal within thirty business days of receipt of the appeal. *See id.*

Level-3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level-2 Appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L). A Leve1-3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level-2 Appeal. *See id.* A Level-3 Appeal of the District Administrator's failure to dispose of the Level-2 Appeal in a timely manner must be filed within 35 days of the filing of the Level-2 appeal. A.D. 9.6(6)(M). A Level-3 Appeal is reviewed by the Commissioner of Correction or his or her designee. A.D. 9.6(6)(L).

**Rooks's Failure to Exhaust**

Rooks was obligated to exhaust his administrative remedies for his Eighth Amendment claims against correctional staff under Administrative Directive 9.6 prior to filing this action. *See Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust, under Administrative Directive 9.6, his excessive force claim against correctional staff); *see also Vann v. Fischer*, No. 11 CIV. 1958 KPF, 2014 WL 4188077, at *22 (S.D.N.Y. Aug. 25, 2014) (dismissing claim brought in amended complaint for failure to exhaust in compliance with PLRA).

As discussed below, Defendants have submitted evidence demonstrating that Rooks's remedies under Administrative Directive 9.6 were available for his Eighth Amendment claims but that he failed to satisfy all of the steps under Directive 9.6 for exhausting his Eighth Amendment claims prior to filing this action. Because Rooks failed to exhaust his Eighth Amendment claims in compliance with the PLRA, the Court need not reach the merits of these claims. *See Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002) (declining to review the merits of claims that failed on nonexhaustion grounds).

<u>Conditions of Confinement</u>

In his amended complaint, Rooks complained of being exposed to inhumane conditions, including no hot water or electricity in his cell and dirty shower stalls with feces, blood and other bodily fluids, while housed at the SRG Phase 2 Unit at MacDougall.[13] Am. Compl at ¶¶ 23-24, 28; IRO at pp. 4-5, 10-11, 13-14.

---

[13] The Court's initial review noted that the general restrictions of the SRG Program do not establish a claim of Eighth Amendment violation. IRO at pp. 10-11 n.9. *See Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) ("Although the conditions described [in phases 2 and 3 of the SRG program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional."); *Pagan v. Dougherty*, No. 3:18-cv-1668 (VLB), 2019 WL 2616975 (D. Conn. June 26, 2019) (allegations that during confinement in SRG program prisoner was

Rooks admits that he did not file any grievances to complain about his conditions within the SRG Phase 2 Unit while he was confined at Northern. Defs.' Rule 56(a) at ¶ 8; Pl.'s Rule 56(a) at ¶ 8; *see* Officer Siena, Defs.' ex. E (regarding grievance filing at Northern). Rooks maintains, however, that he has exhausted his Eighth Amendment conditions claims because he filed a Level-1 Grievance complaining about his Phase 2 placement and stating, "this is making my living conditions worse." Pl.'s Rule 56(a) at ¶ 7. He also asserts that he spoke verbally with both Captain Salius and Warden Barone about the "[i]nhumane conditions." *Id.;* Pl.'s Opp (Mem.) at 7; (Decl.) at ¶ 14.

MacDougall Administrative Remedies Coordinator ("ARC") Bennett, who reviewed Rooks's administrative remedies filings from November 19, 2019 to March 6, 2020, avers that Rooks filed the following grievances during that period. Bennett decl, Defs.' ex. C at ¶¶ 4-11.[14]

Rooks filed a Level-1 Grievance (CN 9602) dated December 20, 2019 that challenged his placement in Phase 2 rather than Phase 3 of the SRG program; this grievance was returned without disposition because Rooks had not attached his CN 9601 or explained his failure to do so. *Id.* at ¶ 9, pp. 20-22.

Rooks filed another Level-1 Grievance (CN 9602) dated December 20, 2019, asserting that he should have been placed in SRG Phase 1 or 3 rather than SRG Phase 2. *Id.* at pp. 27-28. In this Level-1 Grievance, Rooks stated:

---

subjected to limitations on telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers and was confined in his cell for 23 hours per day did not support an objective component of Eighth Amendment claim for inhumane conditions of confinement) (citing cases).

[14] She avers that grievances and grievance appeals are collected on a daily basis from the administrative remedies box and that properly filed grievances are logged into the MacDougall Grievance Log upon receipt. *Id.* at ¶¶ 4-5.

On the date of 11.19.19 I got to Walker C.I. placed in S.R.G. status Phase (2) Two[.] This is my first time S.R.G. Affiliated[.] I was found guilty for a piece of paper with Crip affiliates on it but the penmanship wasn't mine and the facts I presented [sic] didn't hold any merit[.] [T]here are Questions unanswered by Gang Intel who hasn't spoken to me yet or to my Unit Manager Captain Salius. On 12.20.19 Captain Salius toured and gave me a verbal[] response to my request about my Phase 2 placing because at first to him I didn't meet the criteria of Phase 1 and they didn't put in Phase 3 [e]ither[.] Policy states that you start either Phase 1 or Phase 3[.] [T]hey made up the[ir] own rules by placing me in Phase 2[.] I['] m a first timer offender no leadership no rank[.] I was set up with a document in my cell. But I['] m filing against my housing and placement in Phase 2 when I should be a Phase 1 or Phase 3. My resolution is for me to be put in either Phase 1 or Phase 3[.] I'm a first timer[.] I don't want no favors or unlawful justice[.] [T]his is making my living conditions worse.

*Id.* at p. 27. His Level-1 Grievance was denied for the stated reason that his claim was "unsubstantiated" and that he was "being managed appropriately in phase 2." *Id.* Rooks appealed this disposition in a Level-3 Grievance (CN 9604), asserting:

My claim is important. That many SRG Affiliates [have] not started the Program in Phase 2. Most people caught with paperwork non-leadership is placed in Phase 3 (Corrigan)[.] I should have not been placed here[.] [E]ven the Captain Hughes stated I should be Phase 3 First time offender.

*Id.* at p. 25. This Level-2 Grievance Appeal was denied for the stated reasons that Warden Barone's response was appropriate and that Administrative Directive 6.14 "does not state that an inmate must begin the program in phases 1, or 3." *Id.*

Even if DOC officials had some notice that Rooks had a complaint about his living conditions in the SRG Phase 2 Unit, "notice alone is insufficient" to satisfy the PLRA exhaustion requirement. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Vidro v. Erfe*, No. 3:18-CV-00567 (CSH), 2019 WL 4738896, at *5 (D. Conn. Sept. 26, 2019). "Because the exhaustion requirement is intended to afford prison officials an opportunity to address the issue internally, ... the inmate must include sufficient information to enable prison officials to address the same claim asserted in federal court." *Baltas v. Rivera*, No. 3:19CV1043 (MPS),

14

2020 WL 6199821, at *8 (D. Conn. Oct. 22, 2020); s*ee Garcia v. Univ. of Connecticut Health Care Ctr.*, No. 3:16CV852 (JCH), 2018 WL 5830840, at *6 (D. Conn. Nov. 7, 2018) (Plaintiff failed to exhaust retaliation claims where his grievance contained no factual information as to the claim and indicated only that he was "placed in restraint in retaliation for his conduct."). Rooks's Grievances complained that his Phase 2 placement was improper and a potential error. Although he indicated that his Phase 2 placement was "making [his] living conditions worse," his Level-1 Grievance failed to provide DOC with sufficient information to adjudicate his claims about a lack of hot water or electricity in his cell, dirty shower stalls, or any other specific condition of confinement. *See Riles v. Semple*, 2022 WL 124231, at *2 (D. Conn. Jan. 13, 2022)(noting that "language included in particular grievances may be sufficient to alert the prison to some, but not all of a prisoner's claims (or some, but not all, of the allegations on which a particular claim is based)," and finding that "a grievance that references 'permanent solitary confinement' and 'special needs status'—but no other conditions of confinement—is not sufficient to exhaust claims challenging any and all conditions of confinement while in solitary confinement or on special needs status.") And his Level-2 Grievance complains about his Phase 2 placement as improper and inconsistent with Directive 6.14, but it makes no mention of difficult living conditions.

Thus, the record reflects that Rooks has not complied with the PLRA requirement to "us[e] all steps" under Directive 9.6 to exhaust his Eighth Amendment claims alleging inhumane conditions of confinement. Further, the record fails to suggest that the administrative remedies under Administrative Directive 9.6 were unavailable to Rooks so as to excuse his exhaustion as contemplated by *Ross. See Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363, at

15

*10 (D. Conn. Sept. 20, 2021) (noting plaintiff's prior grievance filing demonstrated availability of administrative remedies). Thus, the Court concludes that Defendants have met their burden of demonstrating that no genuine dispute of material fact exists as to Rook's failure to exhaust his remedies under Administrative Directive 9.6 for his claims of Eighth Amendment violation based on the alleged inhumane conditions of confinement in the SRG Phase 2 Unit.[15] The Court must grant the motion for summary judgment on this ground.

<u>Failure to Protect</u>

In his amended complaint, Rooks alleged that he was subjected to threats and an environment where inmates antagonized and bullied each other to join their gangs while he was confined in the SRG Phase 2 Unit, and that on March 6, 2020, he broke his right pinky as a result of certain Bloods-affiliated inmates' bullying conduct in the recreation yard. Am. Compl. at ¶¶ 22, 31, 36-37; *see* IRO at pp. 6, 11.

Rooks admits that he has not exhausted all of his available remedies for his Eighth Amendment failure to protect claims. *See* Pl.'s Opp. (Mem.) at 1; Defs.' Rule 56(a) at ¶¶ 8-9; Pl.'s Rule 56(a) at ¶¶ 8-9; *see* Bennett decl., Defs.' ex. C (regarding grievance filing at MacDougall); Officer Siena, Defs.' ex. E (regarding grievance filing at Northern). He nevertheless counters that the Court should deny summary judgment on his unexhausted failure

---

[15] Rooks's original complaint also alleged that inmates were subjected to inadequate clothing for "freezing" winter outdoor recreation. Compl. at ¶ 38. Rooks's amended complaint did not appear to reassert this complaint about his conditions at MacDougall. *See* Am. Compl. at ¶¶ 22-39. Further, the record evidence shows that the issue of inadequate clothing for winter recreation was not addressed in his grievance filings. *See* Defs.' Reply, ECF No. 74 at 5-7. Thus, even if this allegation is considered part of his Eighth Amendment claims arising from his conditions in the SRG Phase 2 Unit, Defendants' motion for summary judgment must be granted on any such claim on the ground of nonexhaustion.

to protect claims due to disputed issues of fact relevant to the merits of his claims. Pl.'s Opp. (Mem.) at pp. 1, 7.

The PLRA's mandatory language—requiring that an inmate "shall" exhaust "such administrative remedies as are available" prior to bringing an action in federal court—forecloses Rooks's Eighth Amendment failure to protect claim even if it might otherwise have merit. *See Ross*, 578 U.S. at 639 (2016) ("mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"). In light of Rooks's admission and the record evidence substantiating Rooks's failure to exhaust his claims about threats or bullying by other inmates (including the incident on March 6, 2020) while housed at the SRG Phase 2 Unit, the Court must grant the motion for summary judgment on Rooks's Eighth Amendment failure to protect claims on the ground of failure to exhaust.

<u>Excessive Force</u>

Plaintiff alleged that on November 5, 2019, Captain Hurdle sprayed him with mace after he had taken down the window covering on his Garner cell window, and that he was then placed in in-cell restraints. Am. Comp. at ¶¶ 17-18; *see* IRO at pp. 14.

Rooks admits that he did not file any grievances while he was at either Garner or MacDougall concerning the alleged use of excessive force, the deployment of a chemical agent, or his placement in in-cell restraints on November 5, 2019. *See* Defs.' Local Rule 56(a) at ¶¶ 5-6; Pl.'s Rule 56(a) at ¶¶ 5-6; Pl.'s Opp. (Mem.) at p. 1; *see* Kingsley decl., Defs.' ex. D; Bennett decl., Defs. ex. C. He counters, however, that his Eighth Amendment excessive force claim should not be barred for nonexhaustion because his "process requests to prison officials were not

being answered and the cover up phase was in progress" after he was transferred from Garner to MacDougall. Pl.'s Opp. (Mem.) at p. 6.

Even if DOC staff failed to answer his inmate requests (CN 9601), Rooks cannot show that his administrative remedies were unavailable under Administrative Directive 9.6.[16] *See Dennis v. Eason*, No. 3:20-CV-01118 (VLB), 2020 WL 5912559, at *4 (D. Conn. Oct. 6, 2020) (dismissing claim for nonexhaustion because plaintiff was not precluded "from filing a timely grievance even without a timely response to his Inmate Request."). Rooks could not have been thwarted from filing his Level-1 Grievance on the basis of DOC staff's failure to answer his inmate requests because Directive 9.6 permits an inmate to file a Level-1 grievance with "an explanation indicating why CN 9601, Inmate Request Form, is not attached." A.D. 9.6(6)(C).[17]

As Rooks concedes that he did not exhaust his administrative remedies under Directive 9.6 for his Eighth Amendment excessive force claims, and no evidence suggests that his remedies were unavailable, the Defendants' motion for summary judgment must be granted on Rooks's Eighth Amendment excessive force claims due to his failure to comply with the PLRA's exhaustion requirement.

### B.    Fourteenth Amendment Procedural Due Process

---

[16] Directive 9.6(6)(A) requires an inmate to seek informal resolution either verbally with a supervisor/manager or with a written request via CN 9601, Inmate Request Form, in the event that "the verbal option does not resolve the issue." A.D. 9.6(6)(A). Directive 9.6, which requires the Level-Grievance to be filed within thirty calendars days of the incident, provides for situations where an inmate has attempted to resolve his issue informally through an inmate request but has not received a response prior to the last day to file the Level-1 Grievance. *See* A.D. 9.6(6)(C).
[17] Similarly, Directive 9.6 provides that an inmate may file an appeal for a Level-1 or Level-2 Grievance as to which the inmate has not received a timely response. *See* A.D. 9.6(6)(I), (L), (M).

Rooks alleges that his Fourteenth Amendment rights were violated in connection with the finding of guilt on his SRG Affiliation charge because he was not provided with the evidence indicating his SRG affiliation; he was denied an advocate; he was not permitted an adequate opportunity to prepare for his hearing; and he was not afforded an opportunity to present his views. Am. Compl. at ¶¶ 9-11. In his declaration, Rooks asserts that he was seen by Investigator Snowden on October 21, 2021, but was denied an opportunity to have any witnesses and was found guilty on October 23, 2021, without any proper investigation or opportunity to view the video footage to determine if the document had been placed in his property. Pl.'s Opp. (Decl.) at ¶¶ 5-7.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. The Court must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As the Second Circuit has explained, courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship'

19

include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)).

If there is a liberty interest, the court considers whether the prisoner received the proper process due to him. When evaluating the processes used in prison disciplinary and administrative decision making, courts must be "mindful of the context in which th[e] case arises" and "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608-09 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)). For a disciplinary confinement, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). Further, due process requires that "disciplinary determinations be supported by some '*reliable* evidence' of guilt." *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)) (emphasis in *Elder*).

Defendants do not to contest the issue of whether Rooks was deprived of a liberty interest as a result of the guilty finding. Defendants argue instead that Rooks was afforded all of the process that was due. Defs.' Mem. at pp. 20-25. Defendants maintain further that any due process violation is subject to harmless error review. *Id.*

"The Second Circuit has endorsed harmless-error review for inmate due process claims." *See Gibson v. Heary*, No. 17-CV-272S, 2021 WL 854736, at *10 (W.D.N.Y. Mar. 5, 2021) (citing *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)). On a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that the alleged procedural errors caused him prejudice by affecting the outcome of the hearing. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991) (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Clark v. Dannheim,* 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing"). A plaintiff bears the "burden to show that he was prejudiced by the defendants' conduct," and "he cannot prevail on his claim based on mere speculation." *Allah v. Semple*, No. 3:18-CV-887 (KAD), 2019 WL 6529821, at *9 (D. Conn. Dec. 4, 2019).

Thus, the Court reviews the record to determine whether it supports any reasonable inference that a procedural due process error occurred that prejudiced Rooks.[18]

---

[18] The Disciplinary Process Summary Report submitted by Defendants as evidence to support their motion for summary judgment shows that sanctions imposed for his guilty finding on the charge for SRG Affiliation included loss of Risk Reduction Earned Credit ("RREC"). *See* McNeil decl., ex. H at p. 8 (forfeiture of 25 RREC).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a plaintiff may not pursue a claim under section 1983 of title 42 of the U.S. Code that "would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 486-87. Subsequently, in *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court held that the rule announced in *Heck* applies to claims challenging disciplinary proceedings that resulted in loss of credits that affect the duration of incarceration. *Id.* at 648. Further, the Supreme Court made clear that the *Heck* bar applies even when a complaint does not expressly seek restoration of credits; what matters is whether success on a claim would "necessarily imply the invalidity of the deprivation of [

Notice of Disciplinary Charge

In a prison disciplinary proceeding, due process requires prison officials to provide "an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing." *Elder*, 967 F.3d at 128 (citation omitted). "[N]otice is constitutionally adequate when it is sufficiently specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Id.* (internal quotation and citation omitted). Notice need not "painstakingly detail" all facts "relevant to the date, place, and manner of charged inmate misconduct[,]" but it must permit a "reasonable person" to "understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Id.* (citation omitted); *see also Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) ("The discrepancy as to the precise nature of the threatened harm did not represent a failure of specificity that would impair Kalwasinski's ability to prepare his defense, especially since his defense was simply that [the] entire report was a fabrication.") Moreover, due process does not require prison officials to divulge sensitive gang information in a disciplinary report that could compromise legitimate penological considerations of safety and

---

] good-time credits." *Id.* at 645-48. The Second Circuit later held in *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), that a plaintiff challenging a prison disciplinary proceeding that resulted both in loss of credits that affect the duration of incarceration and other sanctions may nevertheless proceed under section 1983 "if he agrees to abandon forever any and all claims he has with respect to the sanctions that affected the length of his imprisonment." *Id.* at 100. Loss of RREC affects the duration of a prison sentence in Connecticut. *See Green v. Riffo*, No., 2019 WL 2302412, at *9 (D. Conn. May 29, 2019).

As discussed in this ruling, Defendants have met their burden of demonstrating the absence of a genuine dispute of material fact in relation to Rooks's claim of a procedural due process violation in connection with his finding of guilt of SRG Affiliation. Thus, there is no reason to require Rooks to file a notice that he "agrees to abandon forever any and all claims he has with respect to the sanctions that affected the length of his imprisonment." *Peralta*, 467 F.3d at 100.

security. *See Peralta v. Vasquez*, No. 01 CIV. 3171(BSJ), 2010 WL 391839, at *7 (S.D.N.Y. Feb. 4, 2010), *aff'd sub nom. Peralta v. Goord*, 402 F. App'x 594 (2d Cir. 2010) (due to consideration for prison safety, misbehavior report was not defective for failure to identify gang with which prisoner was associated).

The disciplinary report issued by Officer Blekis indicates that it was delivered to Rooks on October 18, 2019, at 2:18 PM, by Officer Scully. Blekis, decl., Defs.' ex. F, at p. 46. Rooks does not deny receipt of the disciplinary report on October 18, 2019; he asserts only that "the ticket was slid under [his] door" by Officer Scully, who then left. *See* Pl.'s Rule 56(a) at ¶ 14.

Furthermore, the disciplinary report conveyed sufficient information to permit a reasonable person to understand the conduct at issue in compliance with due process. The disciplinary report explained that Rooks was being charged with SRG affiliation due to a document discovered in his property that "contained multiple [SRG] CRIP identifiers" during a shakedown at approximately 9 AM on October 18, 2019. *See* Blekis, decl., Defs.' ex. F, at p. 46. No reasonable juror could conclude based on the undisputed evidence that Rooks failed to receive adequate notice of the disciplinary charges against him in accordance with due process standards.

<u>Opportunity to Present Evidence, Witnesses, and Witness Statements</u>

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. The Second Circuit has held that "at a minimum, a prisoner is entitled to be 'confronted with the accusation, informed of the evidence against him ... and afforded a reasonable opportunity to explain his

23

actions.'" *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (quoting *Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971)).

Rooks claims that he was denied an opportunity to have any witnesses and was found guilty without a proper investigation or ability to view the prison surveillance video to see if the document was placed in his property. Pl.'s Opp. (Decl.) at p. 3 (¶¶ 5-6). He also maintains that he was unable to review the document containing the SRG identifiers until the date of the hearing. Pl.'s Opp. (Decl.) at ¶ 7; Pl.'s Opp. (Mem.) at p. 10.

Rooks has not adduced evidence demonstrating that any witness testimony would have assisted his defense and thereby affected the outcome of the hearing. *Allah v. Semple*, No. 3:18-CV-887 (KAD), 2019 WL 6529821, at *8-*9 (D. Conn. Dec. 4, 2019) (explaining that plaintiff must show that testimony from witnesses would have "helped his defense and affected the outcome of the hearing").

Furthermore, he has failed to substantiate his claim that prison surveillance video would show the document being planted in his property. Likewise, no evidence in the record supports his assertions that the investigation was lacking or improper, that Officer Snowden could not have conducted an investigation on Monday, October 21, 2019, or that Officer Snowden could have obtained DNA and fingerprint evidence. *See* Pl.'s Rule 56(a) at ¶ 19. Nor has Rooks adduced any evidence to demonstrate that he did not have an adequate opportunity to prepare for his hearing. "A Court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see, e.g.*, *Sawyer v. Prack*, No. 9:14-CV-1198 (DNH/DEP), 2016 WL 5440596, at *12 (N.D.N.Y. July 29, 2016) ("[A]n inmate's speculation regarding what testimony a potential witness might have offered is not enough to demonstrate

prejudice and non-harmless error from a disciplinary hearing officer's refusal to ask [a] potential witness to participate in the hearing").

Finally, the record fails to suggest any inference that Rooks's procedural due process rights were violated by a failure to provide him with adequate access to the document with the CRIP identifiers in advance of the hearing date. Even if Rooks had been able to establish a defense that the document was not in his handwriting, the discovery of the document with SRG identifiers in his property was sufficient to support a finding of guilt on the SRG Affiliation charge. *See* Defs.' Rule 56(a) at ¶ 25; MacNeil decl, ex. G at ¶¶ 15-16.

Accordingly, no reasonable juror could find that Rooks was prejudiced by Defendants' conduct with respect to his ability to prepare his defense, call witnesses, or present evidence.

<u>Written Statement of Reasons</u>

The due process requirement is satisfied if a plaintiff receives a written statement of "the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563-67). DHO MacNeil's Disciplinary Process Summary Report afforded Rooks with a written statement, albeit brief, that described the evidence heard and the evidentiary basis for finding Rooks guilty of the SRG Affiliation charge. Discip. Process Summ. Rpt., Defs.' ex. H at p. 9. Specifically, the Disciplinary Process Summary Report explained that Rooks "stated the paper wasn't his but the paper was found in his cell" and that he was found guilty "based on staff observation and documentation." *Id.*

No reasonable juror could determine based on this record that the DHO's written statement did not identify the evidence relied upon and the reasons for the guilty finding.

<u>Evidentiary Support for Guilty Finding</u>

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . ." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. The Second Circuit has explained that courts should not "construe[ ] the phrase 'any evidence' literally." *Elder*, 967 F.3d at 129 (quoting *Luna*, 356 F.3d at 488). "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Id.* at 129-30 (quoting *Sira*, 380 F.3d at 80). Thus, a disciplinary determination must be supported by "some '*reliable* evidence' of guilt." *Id.* at 129 (quoting *Luna*, 356 F.3d at 488) (emphasis in *Elder*).

Rooks does not dispute that prior to the hearing, DHO McNeil reviewed the documentary evidence in the case, including the incident report and supporting documentation, the disciplinary investigation report, and the document found in Rooks's property. Defs.' Rule 56(a) at ¶ 24; Pl.'s Rule 56(a) at ¶ 24; *see* MacNeil decl, ex. H at ¶ 7. The incident report dated October 18, 2019 prepared by Officer Blekis describes the "shakedown" of Rooks's "paperwork which Rooks had retained in his cell prior to being placed in restrictive housing" and the discovery of "a piece of lined paper which contained multiple Security Risk Group (SRG) CRIP identifiers, specifically the 5 2 Hoover CRIP set." Incident Report, Defs.' ex. H at p. 13. Officer Snowden's Disciplinary Investigation Report stated:

> On October 18, 2019 at approximately 9 am, GCI staff states they were examining some property belonging to INMATE Rooks, Marcus #2668-1 which had been taken from his

assigned cell the day before and stored in the phone room over night for further review. It was at this time a piece of paper was discovered, which continued multiple Security Risk Group (SRG) CRIP identifiers. As a result of Inmate Rooks being in possession of this material, he is being issued a class A Disciplinary Report for SRG Affiliation.

Snowden Discip. Invest. Rpt., Defs' ex. H at p. 11.

The staff accounts about the document with SRG identifiers being discovered in Rooks's property are consistent with Rooks's own admission that the document was located in his property. *See* Defs.' Rule 56(a) at ¶ 11; Pl.'s Rule 56(a) at ¶ 11. Based on this record, no reasonable jury could conclude that DHO MacNeil's SRG-affiliation guilty finding was not supported by "some *reliable* evidence of guilt." *Elder*, 967 F.3d at 129.

<u>Impartial Hearing Officer</u>

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing cases). Nevertheless, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.* (citing cases). Prison officials serving as hearing officers enjoy a rebuttable presumption that they are unbiased. *Allen*, 100 F.3d at 259. "Claims of a hearing officer bias are common in [inmate section] 1983 cases, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify*, 968 F.Supp.2d 532, 541 (W.D.N.Y. 2013) (citing cases). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez*, No. 09–CV–626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).

There is no evidence in the record that raises an inference that DHO MacNeil acted in a biased manner in rendering the guilty finding. No reasonable jury could find a due process violation based on a failure to provide an impartial hearing officer.

Advisor Assistance

Under "certain circumstances," including when a prisoner is held in restrictive housing, due process principles require prison authorities "to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng,* 858 F.2d at 897. A prisoner who is illiterate, confined in a restrictive housing unit, transferred to another correctional institution, or unable to grasp the complex nature of the issues may be entitled to an assigned advocate to assist him in preparing for the hearing. *Id.* at 897-98 (citing *Wolff,* 418 U.S. at 570). The "assigned assistant's precise role and the contours of the assistant's obligations" are not defined, but "[a]t a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Elder*, 967 F.3d at 126 (quoting *Eng*, 858 F.2d at 898). The assistant is not required "to go beyond the specific instructions of the inmate" in rendering assistance. *Id.* (quoting *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)).

The parties dispute whether Rooks was offered but declined advisor assistance. *See* Defs.' Rule 56(a) at ¶ 19; Pl.'s Rule 56(a) at ¶ 11; Pl.'s decl. at ¶ 5. Rooks has failed, however, to provide any evidence raising any inference that he would not have been found guilty of SRG-affiliation had he been provided with advisor assistance. *See Hernandez v. Selsky*, 572 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) (concluding that the plaintiff failed to show how outcome of hearing would have been different had employee assistant interviewed witnesses, and thus any

28

alleged inadequate assistance was harmless error not warranting denial of summary judgment). In light of the evidence showing that Rooks's guilty finding was supported by "some evidence" consistent with Rooks's own admission that the document containing SRG-identifiers was in his property, no reasonable jury could conclude that Rooks was prejudiced by any failure to provide him with an advisor for his SRG-affiliation hearing.

Thus, the Court will grant the motion for summary judgment in Defendants' favor on this claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [ECF No. 62] is GRANTED. The clerk is instructed to enter judgment in Defendants' favor and to close this case.

_____/s/_____<br/>Michael P. Shea, U.S.D.J.

**SO ORDERED** this 24th day of February, at Hartford, Connecticut.